IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

[4] VICTOR MANUEL VALLE-LASALLE,

Defendant.

CRIMINAL NOS.  97-245 (SCC)(HRV)
97-284 (SCC)(HRV)

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.   INTRODUCTION**

Pending before the Court are the identical motions filed by *pro se* defendant Victor Manuel Valle-Lasalle (hereinafter "Mr. Valle-Lasalle") seeking a reduction of his sentence pursuant to the compassionate release statute—18 U.S.C. § 3582(c)(1)(A)(i). (Criminal No. 97-245 (SCC), Docket No. 1085 and Criminal No. 97-284 (SCC), Docket No. 1855). The government opposes. (Docket Nos. 1094 and 1885, respectively). The matter was referred to me for report and recommendation. (Docket Nos. 1128 and 1896). For the reasons set forth below, I recommend that the motions be DENIED.

**II.   PROCEDURAL HISTORY**

   **A. Criminal No. 97-245**

Mr. Valle-Lasalle and several of his co-defendants were convicted at trial for their participation in a cocaine distribution conspiracy. (Docket No. 753). He was sentenced to 360 months of imprisonment and a supervised release term of 10 years. (Docket No.

851). Both his conviction and sentence were upheld on appeal. *United States v. Nelson-Rodriguez*, 319 F.3d 12 (1st Cir. 2003). His attempts to disturb both the conviction and sentence have proven unsuccessful. *See* Docket Nos. 975, 1021.

On June 27, 2022, Mr. Valle-Lasalle filed the motion for sentence reduction currently pending before the court. (Docket No. 1085). The government opposed on July 22, 2023. (Docket No. 1094). The matter was referred to me for report and recommendation on April 18, 2024. (Docket No. 1128).

**B. Criminal No. 97-284**

A grand jury sitting in this district returned a twelve-count second superseding indictment against Mr. Valle-Lasalle and 17 co-defendants. (Docket No. 816). On November 9, 2000, Mr. Valle-Lasalle pleaded guilty to Counts One, Three, Four and Ten of the second superseding indictment. (Docket No. 1196).[1]

In the plea agreement, the parties stipulated that the applicable base offense level as to Counts One, Three and Four was forty-three (43). (Docket No. 1195 at 6-8). The parties also agreed that a four (4) level increase was warranted to account for Mr. Valle-Lasalle's leadership role in the criminal activity, pursuant to U.S.S.G. § 3B1.1(a). (*Id*. at 6-7). The parties also stipulated a three (3) level reduction for acceptance of

---

[1] Count One charged a violation of 21 U.S.C. § 846, that is, conspiracy to possess with intent to distribute cocaine and marihuana. Count Three charged violations to 18 U.S.C. §§ 924(j) and 2, that is, aiding and abetting in the use and carrying of firearms during and in relation to a drug trafficking offense resulting in the death of a person. Count Four charged the killing of a government witness or informant, in violation of 18 U.S.C. § 1512(a). Count Ten charged aiding and abetting in the solicitation of a crime of violence, in violation of 18 U.S.C. §§ 373 and 2.

2

responsibility under U.S.S.G. § 3E1.1. (*Id.*) The total adjusted offense level was determined to be forty-four (44).

As to the offense of solicitation to commit a crime of violence (Count Ten), the parties stipulated a base offense level of twenty-eight (28), and a three (3) level reduction for acceptance of responsibility under U.S.S.G. §§ 2A1.5 and 3E1.1, respectively. (*Id.* at 8). The maximum penalty as to Counts One and Three was life imprisonment. But since Count Four involved premeditated murder, the punishment for said offense was either the death penalty or imprisonment for life. The parties agreed that in exchange for the government's withdrawal of its notice of intent to seek the death penalty, Mr. Valle-Lasalle would stipulate to a sentence recommendation of life imprisonment. (*Id.*)

On September 6, 2001, Mr. Valle-Lasalle was sentenced to the stipulated term of life imprisonment. (Docket No. 1413). Judgment was entered on September 10, 2001. (Docket No. 1414). Mr. Valle-Lasalle did not appeal. However, on January 12, 2006, Mr. Valle-Lasalle filed a 28 U.S.C. § 2255 petition. (Docket No. 1656; *see also* Civil No. 06-1027 (JAF)). Said habeas petition was denied on April 5, 2006. (Docket No. 1659). The First Circuit affirmed the dismissal of the habeas petition on July 19, 2007. (Appeal No. 06-2002). The Court also denied post-conviction relief in the form of a petition for a writ of *audita querela*, (*see* Civil No. 10-1182 (PG)), and a request for sentencing reduction under retroactive Amendment 782. (Docket No. 1831).

In this case, Mr. Valle-Lasalle filed his identical motion for compassionate release on June 27, 2022. (Docket No. 1855). The government has incorporated by reference the arguments in opposition made in Criminal No. 97-245 (SCC). (Docket No. 1885). This

motion has likewise been referred to me for report and recommendation. (Docket No. 1896).

III. **FACTUAL BACKGROUND**

The relevant factual background is constructed from my review of the record, including the First Circuit opinion in *United States v. Nelson-Rodriguez*, 319 F.3d 12 (1st Cir. 2003), as well as the summary-of-the-facts section of the plea agreement signed by Mr. Valle-Lasalle. (Criminal No. 97-284 (SCC), Docket No. 1195).

The investigation as to the drug-importation and distribution conspiracy began in 1997 when an individual agreed to infiltrate the drug-trafficking organization and serve as a confidential informant for the F.B.I. Mr. Valle-Lasalle and his cohorts were members of a group that imported controlled substances from Colombia for distribution in Puerto Rico and New York. The evidence on record showed four planned importations of cocaine from Colombia, one of which was successful in the amount of 250 kilograms. There was also a planned importation of heroin from St. Maarten that was not successful, and a separate one involving more than 4,000 pounds of marijuana that also did not materialize.

Raúl Rivera-Pérez ("Rivera") was the leader of the organization and Eduardo Arroyo-Maldonado ("Arroyo") was his lieutenant. However, at some point, after Arroyo became too greedy, Rivera replaced him with Mr. Valle-Lasalle.

The evidence at trial showed that in April of 1997, the drug organization began arranging an importation of 1,100 kilograms of cocaine from Colombia. According to the plan, the cocaine was to be received at a location approximately 35 miles off the northern coast of Puerto Rico, where members of the organization would pick up the drugs in their

own boat and bring the drugs into Puerto Rico. While this importation did not pan out due to, among other things, the arrest of a cocaine supplier in Venezuela, the evidence showed several actions by the members of the conspiracy in preparation for the shipment. For instance, there was a meeting in which Mr. Valle-Lasalle participated to inspect the boat to be used and the shore area. They also visited the house where the drugs would be temporarily stored. Mr. Valle-Lasalle showed a police scanner to a co-conspirator while boasting that they would have "no trouble" because one of his relatives worked with the local police. *See Nelson-Rodriguez*, 319 F.3d at 25-26.

While awaiting trial in Criminal No. 97-245, a federal grand jury returned several superseding indictments against Mr. Valle-Lasalle and seventeen other individuals for their involvement in a separate drug-trafficking conspiracy that spanned from 1993 to 1996. As stated above, charges were also brought for possession of firearms in furtherance of drug trafficking resulting in death, for the killing of a government witness or informant, and for solicitation of a crime of violence. (*See* Criminal No. 97-284 (JAF), Docket No. 816).

Specifically, it was alleged in the charging documents that in February of 1996, Mr. Valle-Lasalle participated in the smuggling of a shipment of cocaine into Puerto Rico with one Carlos R. Rodriguez-Torres, aka, "Roberto Caballo". Valle-Lasalle and others stole 30 kilograms of cocaine from said shipment. In July of 1996, and in order to prevent Rodriguez-Torres from informing the owners of the cocaine that he was involved in the theft, Mr. Valle-Lasalle issued an order to kill Rodriguez-Torres with a firearm. That order was complied with. In October of 1996, Mr. Valle-Lasalle and his accomplices were charged at the state level with the murder of Rodriguez-Torres.

While on bail at the state level, Mr. Valle-Lasalle organized members of his organization to find and kill Eduard Llaurador whom the defendant knew was going to testify against him at the state murder trial. He also suspected that Llaurador was going to cooperate with the federal authorities against him. Accordingly, on October 13, 1996, Mr. Valle-Lasalle supervised and participated in the abduction of Llaurador in Yauco, Puerto Rico, and in his subsequent murder by decapitation with a machete. In 1998, after the return of the first superseding indictment in Criminal No. 97-284 (JAF), and while detained at the Metropolitan Detention Center in Guaynabo, Mr. Valle-Lasalle contacted an individual to solicit the killing of Javier Soto-Alarcon whom defendant believed was going to be a witness against him. Based on this solicitation, the above-mentioned second superseding Indictment was returned in on July 6, 2000 (Criminal No. 97-284, Docket No. 816) to add Count Ten, an offense that Mr. Valle-Lasalle also eventually pleaded guilty to. (Docket No. 1195).

As stated, Mr. Valle-Lasalle pleaded guilty pursuant to a plea agreement with the United States in which he admitted his participation in the drug trafficking offense, in the killing of Llaurador, and his involvement in the solicitation of the murder of Soto-Alarcon. In exchange for the government's withdrawal of the notice of intent to seek the death penalty against him, Mr. Valle-Lasalle agreed to a sentence recommendation of life imprisonment.

Meanwhile, on April 24, 2001, Mr. Valle-Lasalle was sentenced to 99 years for the murder of Rodriguez-Torres at the state level to be served concurrently with the sentences to be imposed at the federal level.

At the federal level, Mr. Valle-Lasalle was sentenced as agreed to life in prison in Criminal No. 97- 284. Relevantly, in the judgment, the Court recommended that Mr. Valle-Lasalle serve first the state sentence. (Criminal No. 97-284, Docket No. 1414 at 3).

## IV.    APPLICABLE LAW AND DISCUSSION

Mr. Valle-Lasalle's request for compassionate release is premised on his wish to be close to his family. He explains that because the federal system has primary jurisdiction over him, he is likely to remain in federal custody for the rest of his life even though he is also extinguishing a state sentence that was ordered to be served concurrently. Due to his place of confinement in the mainland United States, he claims that it is extremely onerous for his family to visit him due to the cost of travel, lodging and other logistical inconveniences. Valle-Lasalle avers that he has served over 24 years of his sentence at the same institution and that he has exhibited good behavior. After encountering individuals that he describes as worse than him, he "is ready to go to Puerto Rico to end his final days with his family." (Docket No. 1085 at 9). At bottom, his argument is that the operation of primary jurisdiction principles, as applied to his situation, is an extraordinary and compelling reason warranting a sentence reduction. Mr. Valle-Lasalle contends that he is requesting judicial intervention because his request to the warden to relinquish primary jurisdiction has been ignored.

The government opposes on three main grounds. First, the United States argues that the defendant has not exhausted administrative remedies. Even though Mr. Valle-Lasalle has argued that he made a request to the warden of his institution and that the same was ignored, the government proffers that there is no record of such request at the Bureau of Prisons. In other words, according to the government, there is no evidence

that the defendant ever requested compassionate release based on his current designation.

Second, as to the merits, the government argues that the evidence is insufficient to establish extraordinary and compelling reasons to warrant release. Because the authority to determine place of confinement resides exclusively with the executive branch and is delegated to the BOP, a primary jurisdiction situation, says the government, cannot serve as basis for compassionate release.

Third, the United States maintains that the section 3553(a) factors do not support compassionate release insofar as the defendant should be required to serve his full sentence given the heinous nature of his conduct. The government notes that if his federal sentence was reduced to time-served so that primary jurisdiction could be relinquished to Puerto Rico, Mr. Valle-Lasalle would qualify for release on parole as early as 2037. According to the government, since he continues to represent a danger to the community, such release would be inconsistent with the § 3553(a) factors.

**A. Legal Framework**

The so-called compassionate release statute allows a court acting on a defendant-filed motion "after the defendant has fully exhausted all administrative rights to appeal", . . . to

> reduce the term of imprisonment (and... impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i). This statute is one of the very few exceptions to the rule that once imposed, a term of imprisonment shall not be modified. *United States v. Saccoccia*, 10 F.4th 1, 3 (1st Cir. 2021).

Thus, to grant a compassionate release motion, the court must find that a defendant has established three things: (1) that extraordinary and compelling reasons warrant a sentence reduction; (2) that the reduction is consistent with the applicable policy statements issued by the Sentencing Commission; and (3) that relief is appropriate under the circumstances of the case after considering the applicable 18 U.S.C. § 3553(a) factors. *United States v. D'Angelo*, ___ 4th ___, No. 22-1875, 2024 U.S. App. LEXIS 18794, at *10-11 (1st Cir. July 30, 2024); *see also United States v. Quiros-Morales*, 83 F.4th 79, 84 (1st Cir. 2023). With respect to the first prong—whether the reasons advanced by the defendant are extraordinary and compelling—the determination is "guided by the plain meaning of those terms." *United States v. Canales-Ramos*, 19 F.4th 561, 566 (1st Cir. 2021). "The plain meaning of 'extraordinary' suggests that a qualifying reason must be a reason that is beyond the mine-run either in fact or in degree . . . By the same token, the plain meaning of 'compelling' suggests that a qualifying reason must be a reason that is both powerful and convincing." *Id*. (citations omitted).

At step two, and because prior to November 1, 2023, the Sentencing Commission had not issued an amended policy statement applicable to prisoner-initiated compassionate release motions, the First Circuit held that district courts have discretion to "consider any complex of circumstances raised by a defendant, as forming an

extraordinary and compelling reason warranting relief." *United States v. Ruvalcaba*, 26 F.4th 14, 28 (1st Cir. 2022). The then in-effect policy statement did not constrain a district court when ruling on a prisoner-initiated motion.[2] *See D'Angelo*, 2024 U.S. App. LEXIS 18794, at *10. Therefore, in this case, the three-steps test outlined above is really comprised of two steps: (1) extraordinary and compelling reasons must exist; and (2) the sentence reduction is warranted after consideration of the section 3553(a) factors. *Id.*

In *United States v. Trenkler*, 47 F.4th 42, 47-48 (1st Cir. 2022), it was clarified that pursuant to the holding in *Ruvalcaba*, district courts "may conduct a holistic review to determine whether the individualized circumstances [of the defendant], taken in the aggregate, present an 'extraordinary and compelling' reason to grant compassionate release," including alleged sentencing errors. The "policy statement—though not applicable—nonetheless may serve as a non-binding reference." *Ruvalcaba*, 26 F.4th at 23. And under the non-binding policy statement, district courts must determine, among other things, "that the defendant is not a danger to the safety of any other person in the

---

[2] The Sentencing Commission's policy statement regarding defendant-filed motions for compassionate release is now in effect. *See* U.S.S.G. § 1B1.13 (Nov. 1, 2023). In it, the Sentencing Commission has identified six circumstances that individually or in combination may provide extraordinary and compelling reasons for a reduction in sentence. U.S.S.G. § 1B1.13(b). These are: certain medical circumstances such as a terminal illness or inability to receive medical care while incarcerated, *id.*, § 1B1.13(b)(1); the defendant's age, *id.* § 1B1.13(b)(2); the defendant's family circumstances, *id.* § 1B1.13(b)(3); the defendant having been the victim of sexual or physical abuse by or at the direction of a correctional officer, *id.* § 1B1.13(b)(4); a catch-all provision of any other reason or combination of reasons similar in gravity to those described in (1) through (4), *id.* § 1B.13(b)(5); and if the defendant received an unusually long sentence, *id.* § 1B1.13(b)(6). Note that place of confinement, or application of the primary jurisdiction doctrine, are not identified as extraordinary and compelling reasons.

community, as provided in 18 U.S.C. § 3142(g)." *D'Angelo*, 2024 U.S. App. LEXIS 18794, at *11 (*quoting* U.S.S.G. § 1B1.13(a)(2)(2018)).

As the second relevant step, even if a defendant has shown extraordinary and compelling reasons, the defendant must clear yet another hurdle: "[h]e must persuade the district court that the section 3553(a) factors weigh in favor of a sentence reduction." *United States v. Texeira*, 23 F.4th 48, 54 (1st Cir. 2022). Therefore, the district court's denial of a motion for compassionate release may be affirmed "solely on the basis of its supportable determination that the section 3553(a) factors weigh against granting such relief." *Id.* (citations omitted); *see also United States v. Vazquez-Ayala*, 96 F.4th 1, 13 (1st Cir. 2024).

**B. Analysis**

Mr. Valle-Lasalle has failed to establish that a reduction of his sentence is warranted. First, he has not shown that he fully exhausted administrative remedies. Second, the reasons asserted by him do not rise to the level of extraordinary and compelling, individually or in combination. Third, even if they had, a sentence reduction would be inconsistent with the § 3553(a) factors.

    ***1. There is no Evidence of Exhaustion of Administrative Remedies***

Mr. Valle-Lasalle states in his motion for compassionate release that "60 days elapsed and the warden has not responded to the request, therefore, the defendant has fully exhausted his administrative exhaustion requirements under 18 U.S.C. § 3582(c)(1)(A)." (*See* Criminal No. 97-245 (SCC), Docket No. 1085 at 7). The government

responds that no evidence of such request was included with defendant's motion and that upon inquiry with the BOP, there is no record that the request was ever made.

Under the statute, the defendant must fully exhaust "all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The "administrative rights to appeal" language refers to the steps that must be followed under the BOP's Administrative Remedies Program, 28 C.F.R. § 542, subpart B. *See United States v. Nieves*, 615 F. Supp. 3d 73, 75 (D.P.R. 2022). However, the exhaustion requirement is not jurisdictional. *See United States v. Texeira-Nieves*, 23 F.4th at 53 ("In our judgment . . . [the] exhaustion requirement is not a jurisdictional limitation . . . it is a non-jurisdictional claim-processing rule.") As such, it is "mandatory unless waived or conceded by the Government." *United States v. Gordon*, No. 19-cr-00007-JAW, 2023 WL 8703439, 2023 U.S. Dist. LEXIS 223293, at *7 (D. Me. Dec. 15, 2023).

Here, since the government has neither waived nor conceded the issue, and there being no evidence whatsoever that it was done, the defendant's failure to exhaust administrative remedies is sufficient grounds to deny without prejudice the compassionate release petition. *See United States v. Ayala-Martinez*, No. 97-082 (RAM), 2022 WL 13946049, 2022 U.S. Dist. LEXIS 181077 (D.P.R. Sept. 28, 2022). Nevertheless, even assuming that Mr. Valle-Lasalle exhausted all administrative remedies, the compassionate release request would still fail on the merits. *Id*. So, for the sake of thoroughness, I will also discuss the merits of the petition.

### *2. The Defendant fails to Establish Extraordinary and Compelling Reasons*

Both Mr. Valle-Lasalle and the government agree on how the sentencing designation and computation rules operate. They disagree as to their application to the present case. For his part, the defendant claims that the operation of the primary jurisdiction doctrine may serve as a basis for establishing extraordinary and compelling reasons warranting compassionate release. The government contends that Mr. Valle-Lasalle is no eligible for a sentencing reduction because he has not demonstrated that his desire to serve the remainder of his sentence in a Puerto Rico correctional institution represents an extraordinary and compelling reason justifying a reduction of his federal sentence.

To be sure, the authority to compute federal sentences and to make place of confine designations rest with the executive branch (Attorney General) through the BOP. *See* 18 U.S.C. § 3585 and 18 U.S.C. § 3621. *See also United States v. Wilson*, 503 U.S. 329, 112 S. Ct. 1351, 117 L. Ed 2d 593 (1992). There is also no controversy between the parties that the sovereign which first arrests a defendant has primary jurisdiction over him. *Jimenez v. Warden*, 147 F. Supp. 2d 24, 28 (D. Mass. 2001)(*citing Thomas v. Whalen*, 962 F.2d 358, 361 n.3 (4th Cir. 1992). Primary jurisdiction remains vested in the sovereign that first arrested the defendant until that sovereign relinquishes its priority through events such as bail release, dismissal of pending charges, parole, or expiration of the sentence. *United States v. Warren*, 610 F.2d 680, 684-85 (9th Cir. 1980)(citations omitted). "However, the sovereign with priority of jurisdiction, here, the United States,

may elect under the doctrine of comity to relinquish it to another sovereign. This discretionary election is an executive, and not a judicial, function." *Id.* at 685.

I agree with the government that Mr. Valle-Lasalle's wish to serve the remainder of his sentence under the custody of the Commonwealth of Puerto Rico Department of Corrections so as to be close to his family does not constitute an extraordinary and compelling reason to warrant a sentencing reduction. While I sympathize with the defendant and his desire to be close to his family, there are reasons both legal and discretionary that counsel against granting relief here. First, legally, unless the BOP decided to relinquish primary jurisdiction, a decision that falls squarely within the discretion of the executive branch, the only way to accomplish what Mr. Valle-Lasalle wants is to reduce his federal life sentence to time served. To do so would go against the spirit of the plea agreement entered into by the parties under which the government agreed to withdraw its notice of intent to seek the death penalty in exchange for the defendant agreeing to serve a life sentence. I am not persuaded that this reason is beyond the mine run nor powerfully convincing.

Second, the government is correct that while the sentencing judge recommended that Mr. Valle-Lasalle first serve his state sentence, it was at the discretion of the BOP to follow such recommendation.

Third, the government makes a valid argument that because parole exists in the state system, as opposed to the federal system, a reduction of the defendant's sentence to time served to accomplish the transfer to Puerto Rico, would make him eligible for parole in a few years according to his local sentence computation sheet. (Docket No. 1085-1 at 13). Mr. Valle-Lasalle has not presented a compelling enough justification to

make him deserving of such privilege, again, to the detriment of the government's plea bargain.

Further, courts have rejected the notion, albeit in different contexts, that the effects of the primary jurisdiction doctrine can amount to extraordinary and compelling reasons warranting compassionate release. *See, e.g., United States v. Cook*, No. 20-1974, 2022 WL 2447897, 2022 U.S. App. LEXIS 18507 (3d Cir. Jul. 6, 2022); *United States v. Isbell*, No. 21-3019, 2022 WL 1800759, 2022 U.S. App. LEXIS 15212 (7th Cir. Jun. 2, 2022); *United States v. Bean*, No. 18-CR-0017-DCLC-CRW, 2024 WL 2870077, 2024 U.S. Dist. LEXIS 100955 (E.D. Tenn. Jun. 6, 2024); *United States v. Gordon*, No. CR 19-46-BLG-SWS, 2024 WL 2749649, 2024 U.S. Dist. LEXIS 95590 (D. Mont. May 29, 2024).

Lastly, although he does not fully develop the argument, Mr. Valle-Lasalle mentions his good behavior and attaches his progress report at BOP. His rehabilitation efforts while in prison such as employment and programing are commendable but fall short of being extraordinary and compelling reasons. *See United States v. Chavez*, 534 F. Supp. 3d 176, 178 (D. Mass. 2021). In fact, using it as reference even though it is non-binding for this case, the policy statement of the Sentencing Commission specifically prohibits considering rehabilitation, by itself, in the extraordinary and compelling reasons calculus. *See* U.S.S.G. § 1B1.13(d); *see also United States v. Malpica-Garcia*, Criminal No. 04-217 (ADC)(HRV), 2024 WL 1172769, 2024 U.S. Dist. LEXIS 51793, at *7 (D.P.R. Mar. 19, 2024). And to the extent they are presented as part of the section 3553(a) analysis, any rehabilitative efforts are outweighed by other factors as outlined below.

### *3. The section 3553(a) factors do not support a sentence reduction*

Assuming *arguendo* the existence of extraordinary and compelling reasons, I find that a reduction of Mr. Valle-Lasalle's sentence would nonetheless be inconsistent with the § 3553(a) factors and that he continues to be a danger to others in the community as provided by 18 U.S.C. § 3142(g).  The weighing of the section 3553(a) factors encompasses a traditional exercise of discretion that will be upheld upon appellate review so long as the appellate court is able to "'discern to some extent a district court's reasoning' as to why it ruled as it did under § 3553(a)." *D'Angelo*, 2024 U.S. App. LEXIS 18794, at *12 (cleaned up).

Here, the seriousness of the offense, the need to provide just punishment, the need to protect the public, and the need to promote deterrence and respect for the law, weigh heavily against a reduction of sentence. *See United States v. Martinez*, No. 2:18-cr-00089-JAW, 2023 WL 3305674, 2023 U.S. Dist. LEXIS 79444 at *29 (D. Me. May 8, 2023).  Mr. Valle-Lasalle was not just any member of the drug organization; he had a leadership role.  He also ordered, and participated in, murders of potential witnesses while on bail, and later while awaiting trial for federal charges.  One of the murders was particularly gruesome (decapitation with a machete).  And although he claims that he has maintained "good behavior", the record shows otherwise. (Criminal No. 97-245 (SCC), Docket No. 1094-1).  Granted, the violation is relatively old (2010), which would seem to cut in his favor.  However, it was sufficiently serious to make it relevant to the present analysis: it involved the possession of a handmade hacksaw. Under these circumstances, a reduction of sentence is not appropriate.

## V.  CONCLUSION

In view of the above, I recommend that the defendant's motions for sentence reduction at Docket Nos. 1085 and 1855, respectively, be DENIED.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within 14 days**. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED**

In San Juan, Puerto Rico this 15th day of August, 2024.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE
